Slip Op. 12-14

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASHLEY FURNITURE INDUSTRIES, INC., | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendants, | **Before:  Gregory W. Carman, Judge** |
| and | **Timothy C. Stanceu, Judge** |
| | **Leo M. Gordon, Judge** |
| AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC., | **Consol. Court No. 07-00323** |
| Defendant-Intervenors. | |

## OPINION

[Dismissing the action for failure to state a claim upon which relief can be granted]

Dated: January 31, 2012

*Kristen H. Mowry*, *Jeffrey S. Grimson*, *Jill A. Cramer*, *Susan E. Lehman*, and *Sarah Wyss*, Mowry & Grimson, PLLC, of Washington, DC and *Kevin Russell*, Goldstein, Howe & Russell, P.C., of Bethesda, MD, for plaintiff.

*Jessica R. Toplin*, *David S. Silverbrand*, and *Courtney S. McNamara*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States.  With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the briefs were *Andrew G. Jones* and *Joseph Barbato*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant U.S. International Trade Commission.  With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

*Jeffrey M. Telep*, *Joseph W. Dorn*, *Taryn Koball Williams*, and *Steven R. Keener*, King & Spalding LLP, of Washington, DC, for defendant-intervenors the American Furniture Manufacturers Committee for Legal Trade, Kincaid Furniture Co., Inc., L. & J.G. Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc., Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture Company, Inc.

Stanceu, Judge: Plaintiff Ashley Furniture Industries, Inc. ("Ashley"), a domestic

furniture manufacturer, brought three similar actions (now consolidated)[1] during the period of

September 4, 2007 through March 4, 2010, all stemming from certain administrative

determinations of the U.S. International Trade Commission ("ITC" or the "Commission") and

U.S. Customs and Border Protection ("Customs" or "CBP").  The ITC denied Ashley status as an

"affected domestic producer" ("ADP") under the Continued Dumping and Subsidy Offset Act of

2000 (the "CDSOA" or "Byrd Amendment"), Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549,

1549A-72-75 (codified at 19 U.S.C. § 1675c (2000)),[2] *repealed by* Deficit Reduction Act of

2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).  ADP

status potentially would have qualified Ashley for annual monetary distributions by Customs of

antidumping duties collected under an antidumping duty order on imports of wooden bedroom

---

[1] Due to the presence of common issues, the court, on February 15, 2011, consolidated plaintiff's three actions under Consol. Court No. 07-00323.  Order (Feb. 15, 2011), ECF No. 51. Consolidated with *Ashley Furniture Industries, Inc. v. United States* under Consol. Court No. 07-00323 are *Ashley Furniture Industries, Inc. v. United States*, Court No. 09-00025 and *Ashley Furniture Industries, Inc. v. United States*, Court No. 10-00081.

[2] Citations are to the codified version of the Continued Dumping and Subsidy Offset Act ("CDSOA"), 19 U.S.C. § 1675c (2000).  All other citations to the United States Code are to the 2006 edition.

furniture from the People's Republic of China.  *Notice of Amended Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Jan. 4, 2005) ("*Antidumping Duty Order*").  The ITC construed the "petition support requirement" of the CDSOA, under which distributions are limited to petitioners and parties in support of a petition, to disqualify Ashley from ADP status because Ashley indicated to the ITC that it opposed the antidumping duty petition on Chinese wooden bedroom furniture.

Plaintiff claims that the administrative actions of the two agencies were inconsistent with the CDSOA, were not supported by substantial evidence, and were otherwise not in accordance with law.  Plaintiff also brings constitutional challenges grounded in the First Amendment, the Fifth Amendment equal protection guarantee, and the Fifth Amendment due process guarantee.

Before the court is Ashley's motion for a preliminary injunction, filed January 11, 2012.  Pl.'s Mot. for Prelim. Inj. (Jan 11, 2012), ECF No. 95.  Ashley seeks to halt, pending a final disposition of this litigation, including all appeals and remands, CBP's pending distribution of certain collected antidumping duties to domestic parties recognized as ADPs by the Commission, including the defendant-intervenors in this case.  *Id.* at 1.  The distribution was scheduled to occur on or after January 31, 2012.[3]  Def. U.S. Customs & Border Protection's Resp. to the Ct.'s Feb. 14, 2011 Request (Feb. 28, 2011), ECF No. 60.  Customs withheld these funds from distribution pending the resolution of various lawsuits, including plaintiff's, challenging the constitutionality of the CDSOA.

---

[3] Defendants represent that distribution is now scheduled to take place on or after March 9, 2012.  Def.'s Mot. for an Extension of Time for all Defs. to File Their Resps. in Opp'n to Pl.'s Mot. for Prelim. Inj. 2 (Jan. 19, 2012), ECF No. 97.

Also before the court are three motions to dismiss under USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted.  Defendant-intervenors American Furniture Manufacturers Committee for Legal Trade, Kincaid Furniture Co., Inc., L. & J.G. Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc., Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture Company, Inc. moved under Rules 12(b)(5), and also Rule 12(c), on February 23, 2011.  Def.-intervenors' Mot. to Dismiss & for J. on the Pleadings (Feb. 23, 2011), ECF No. 55 ("Def.-intervenors' Mot.").  Defendants ITC and Customs moved to dismiss under Rule 12(b)(5) on May 2, 2011.  Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss for Failure to State a Claim (May 2, 2011), ECF No. 80 ("ITC's Mot."); Def. U.S. Customs & Border Protection's Mot. to Dismiss for Failure to State a Claim (May 2, 2011), ECF No. 81 ("Customs' Mot.").

The court rules that plaintiff does not satisfy the standards for obtaining the injunction it seeks.  The court concludes that relief is not available on plaintiff's claims challenging the administration of the CDSOA by the two agencies.  We also conclude that no relief can be granted on Ashley's claims challenging the CDSOA on First Amendment and Fifth Amendment equal protection grounds.  Plaintiff lacks standing to assert the claims it bases on Fifth Amendment due process grounds.  The court will enter judgment dismissing this action.

## I. BACKGROUND

During a 2003 ITC investigation to determine whether imports of wooden bedroom furniture from China were causing or threatening to cause material injury to the domestic industry, *Initiation of Antidumping Duty Investigation: Wooden Bedroom Furniture from the People's Republic of China*, 68 Fed. Reg. 70,228, 70,231 (Dec. 17, 2003), Ashley responded to

the ITC's questionnaires, indicating that it opposed the issuance of an antidumping duty order.

*See*, *e.g.*, First Amended Compl. ¶ 19 (Feb. 9, 2011), ECF No. 50.  Based on the affirmative ITC

injury determination, the International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department") issued the antidumping duty order on imports of wooden

bedroom furniture from China in 2005.  *Antidumping Duty Order*, 70 Fed. Reg. at 329.

Determining that Ashley did not qualify for CDSOA benefits, ITC declined to designate Ashley

an ADP with respect to this order for Fiscal Years 2007 through 2010.  *Distribution of Continued*

*Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,622-23

(May 29, 2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic*

*Producers*, 73 Fed. Reg. 31,196, 31,236-37 (May 30, 2008); *Distribution of Continued Dumping*

*& Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,855-56

(May 29, 2009); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic*

*Producers*, 75 Fed. Reg. 30,530, 30,571-72 (June 1, 2010).

Plaintiff filed actions contesting the government's refusal to provide it CDSOA

distributions of antidumping duties collected during Fiscal Years 2007 (Court No. 07-00323),

2008 (Court No. 09-00025), and 2009-2010 (Court No. 10-00081).  The court stayed the three

actions pending a final resolution of other litigation raising the same or similar issues.[4]  *See*, *e.g.*,

Order (Oct. 23, 2007), ECF No. 13.

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court of

Appeals") in *SKF USA Inc. v. United States*, 556 F.3d 1337 (2009) ("*SKF*"), *cert. denied*, 130 S.

---

[4] The court's order stayed the action "until final resolution of *Pat Huval Restaurant & Oyster Bar, Inc. v. United States International Trade Commission*, Consol. Court No. 06-00290, that is, when all appeals have been exhausted."  Order (Oct. 23, 2007), ECF No. 13.

Ct. 3273 (2010), which addressed legal questions that are also present in this case, the court

issued an order directing Ashley to show why these actions should not be dismissed and lifted the

stay for the purposes of allowing any brief, response, or reply described in that order. *See*, *e.g.*,

Order (Jan. 3, 2011), ECF No. 38.  On January 24, 2011, plaintiff responded to the court's order

and moved for a partial lift of the stay to allow amendment of the complaints as a matter of

course to add an additional count challenging the CDSOA under the First Amendment as applied

to Ashley.  Mot. for Partial Lifting of Stay (Jan. 24, 2011), ECF No. 39; Mot. for Partial Lifting

of Stay (Jan. 24, 2011), ECF No. 23 (Court No. 09-00025); Mot. for Partial Lifting of Stay

(Jan. 24, 2011), ECF No. 21 (Court No. 10-00081).

      The court lifted the stay for all purposes on February 9, 2011. *See*, *e.g.*, Order

(Feb. 9, 2011), ECF No. 45.  The same day, plaintiff filed notices of amended complaints in all

three cases.  First Amended Compl.; First Amended Compl., ECF No. 32 (Court No. 09-00025);

First Amended Compl., ECF No. 30 (Court No. 10-00081).  Defendant-intervenors filed their

motion to dismiss and for judgment on the pleadings on February 23, 2011.  Def.-Intervenors'

Mot.  The ITC and Customs filed their motions to dismiss on May 2, 2011.  ITC's Mot.;

Customs' Mot.

      In July 2011, plaintiff filed a notice of supplemental authority highlighting recent

decisions by the U.S. Supreme Court, which, according to plaintiff, are "relevant to the pending

motions to dismiss Ashley's as-applied First Amendment challenge to the government's

implementation of the [CDSOA]."  Notice of Supp. Authority 1 (July 7, 2011), ECF No. 90

("Pl.'s  Notice of Supp. Authority") (citing *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011);

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2086 (2011); *Citizens*

*United v. Federal Election Comm'n,*, 130 S. Ct. 876 (2010)).  Defendants addressed the

supplemental authority question in their reply briefs and defendant-intervenors filed a letter in

reply.  United States & U.S. Customs & Border Protection's Reply in Supp. of their Mot. to

Dismiss for Failure to State a Claim (July 14, 2011), ECF No. 92; Def. U.S. Int'l Trade

Comm'n's Reply to Pl.'s Br. in Opp'n to Mot. to Dismiss for Failure to State a Claim

(July 14, 2011), ECF No. 93; Def.-intervenor's Resp. to Pl.'s Notice of Supplemental Authority

(July 22, 2011), ECF No. 94.

   Ashley filed its motion for a preliminary injunction on January 11, 2012, seeking to

prevent the pending CBP distribution.  Pl.'s Mot. for Prelim. Inj.; Pl.'s Mem. of Points &

Authorities in Supp. of Mot. for Prelim. Inj. (Jan. 11, 2012), ECF No. 95.

## II.  DISCUSSION

   The court exercises jurisdiction over this action according to section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(i)(4), which provides the Court of International Trade

jurisdiction of civil actions arising out of any law of the United States, such as the CDSOA,

providing for administration with respect to duties (including antidumping duties) on the

importation of merchandise for reasons other than the raising of revenue.  *See Furniture Brands*

*Int'l v. United States*, 35 CIT __, __, Slip Op. 11-132, at 9-15 (Oct. 20, 2011) ("*Furniture*

*Brands*").

   The CDSOA amended the Tariff Act of 1930 ("Tariff Act") to provide for the distribution

of funds from assessed antidumping and countervailing duties to persons with ADP status, which

is limited to petitioners, and interested parties in support of petitions, with respect to which

antidumping duty and countervailing duty orders are entered.[5] 19 U.S.C. § 1675c(a)-(d).[6] The statute directed the ITC to forward to Customs, within sixty days after an antidumping or countervailing duty order is issued, lists of "petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response." *Id.* § 1675c(d)(1).[7] The CDSOA directed Customs to publish in the Federal Register lists of ADPs potentially eligible for distributions of a "continuing dumping and subsidy offset" that are based on the lists obtained from the Commission. *Id.* § 1675c(d)(2). The CDSOA also directed Customs to segregate antidumping and countervailing duties according to the relevant antidumping or countervailing duty order, to maintain these duties in special

---

[5] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ." Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006). In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce." Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

[6] The CDSOA provided that:

> The term "affected domestic producer" means any manufacturer, producer, farmer, rancher or worker representative (including associations of such persons) that
> (A) was a petitioner *or interested party in support of the petition* with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered, and
> (B) remains in operation.

19 U.S.C. § 1675c(b)(1) (emphasis added).

[7] Additionally, the CDSOA directed the U.S. International Trade Commission to forward to U.S. Customs and Border Protection a list identifying affected domestic producers "within 60 days after the effective date of this section in the case of orders or findings in effect on January 1, 1999 . . . ." 19 U.S.C. § 1675c(d)(1). The antidumping duty order at issue in this case was not in effect on that date.

accounts, and to distribute to an ADP annually, as reimbursement for incurred qualifying

expenditures, a ratable share of the funds (including all interest earned) from duties assessed on a

specific unfairly traded product that were received in the preceding fiscal year.  *Id.*

§ 1675c(d)(3), (e).

        In February 2009, approximately one and a half years after plaintiff filed suit, the Court of

Appeals decided *SKF*, upholding the CDSOA against constitutional challenges brought on First

Amendment and Fifth Amendment equal protection grounds.  556 F.3d at 1360.  *SKF* reversed

the decision of the Court of International Trade in *SKF USA Inc. v. United States*, 30 CIT 1433,

451 F. Supp. 2d 1355 (2006), which held the petition support requirement of the CDSOA

unconstitutional on Fifth Amendment equal protection grounds.

        We address below plaintiff's motion for an injunction and the motions to dismiss, basing

our rulings on the claims stated in plaintiff's First Amended Complaints.[8]  In Count 1 of the

amended complaints, plaintiff claims that defendants' actions were unlawful under the CDSOA

---

        [8] In its motions to partially lift the stay on February 1, 2011, plaintiff asserted a right to
amend its complaints as a matter of course because "[d]efendant has not yet filed its answer nor
has it filed a motion to dismiss under Rule 12(b), (e), or (f)."  *See, e.g.*, Mot. For Partial Lifting
of Stay (Jan. 24, 2011), ECF No. 39.  Under the current Rules of this Court, "a party may amend
its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading
is one to which a responsive pleading is required, 21 days after service of a motion under
Rule 12(b), (e), or (f), whichever is earlier."  USCIT R. 15(a) (effective Jan. 1, 2011).  Under the
previous Rule 15(a), a party could amend its pleading "before being served with a responsive
pleading."  Because plaintiff filed its notices of amended complaints just over one month after
the effective date of the change in Rule 15(a), and because the other parties to this case have
addressed the complaint in amended form in their dispositive motions, the court exercises its
discretion under USCIT Rule 89 to accept plaintiff's First Amended Complaints.  USCIT R. 89
("These rules and any amendments take effect at the time specified by the court.  They
govern: . . . proceedings after that date in a case then pending unless: (A) the court specifies
otherwise").

and not supported by substantial evidence.  First Amended Compl. ¶¶ 39-40.[9]  In Counts 2 and 5,

plaintiff challenges the "in support of the petition" requirement of the CDSOA ("petition support

requirement") on constitutional First Amendment grounds.  *Id*. ¶¶ 41-43, 49-50.  In Count 3,

plaintiff brings a challenge to the petition support requirement on Fifth Amendment equal

protection grounds.  *Id*. ¶¶ 44-46.  In Count 4, plaintiff challenges the petition support

requirement on Fifth Amendment due process grounds, claiming that the CDSOA is

impermissibly retroactive.  *Id*. ¶¶ 47-48.

### A.  Plaintiff's Motion for an Injunction Will Be Denied

Plaintiff's January 11, 2012, motion seeks what plaintiff terms a "preliminary injunction"

under which defendants would be enjoined from disbursing any funds "that are currently being

withheld by CBP for Ashley for FY2007-FY2010 . . . for the pendency of this litigation,

including all relevant appeals and remands, until such time as a final court decision is rendered in

this case."  Pl.'s Mot. for Prelim. Inj. 1.  A preliminary injunction normally dissolves upon the

entry of judgment.  *See Fundicao Tupy S.A. v. United States*, 841 F.2d 1101, 1103 (Fed. Cir.

1988) ("[A]lthough a preliminary injunction is usually not subject to a fixed time limitation, it is

*ipso facto* dissolved by a dismissal of the complaint or the entry of a final decree in the cause.")

(internal quotation marks omitted); 11A Charles A. Wright, Arthur R. Miller & Mary K. Kane,

Federal Practice and Procedure, § 2947 (2d ed. 2010) (the principal purpose of preliminary

injunctive relief is to preserve the court's power to render a meaningful decision pursuant to a

---

[9] Plaintiff's three First Amended Complaints are essentially identical but directed to
CDSOA distributions for the different Fiscal Years, *i.e.*, 2007, 2008, 2009, and 2010.  In its
citations to the claims in this consolidated action, the court will cite to the First Amended
Complaint as filed in *Ashley Furniture Industries, Inc. v. United States*, Court No. 07-00323.

trial on the merits). Because our decision today will conclude this action, the question of a

preliminary injunction to prevent irreparable harm during the pendency of this case is moot.

By attempting to enjoin distribution through all remands and appeals, plaintiff's

January 11, 2012 motion seeks equitable relief beyond a preliminary injunction. Additionally,

plaintiff seeks as a remedy that the court order the ITC to declare Ashley an ADP and order

Customs to "disburse to Ashley pursuant to the CDSOA a pro rata portion of the assessed

antidumping duties on wooden bedroom furniture from China . . . ." First Amended Compl. ¶ 51

(Prayer for Relief). In summary, Ashley seeks to prevent Customs from paying to other CDSOA

claimants what Ashley claims is its share of the withheld distributions and seeks affirmative

injunctions against both agencies so that Ashley will receive those distributions. In these

respects, plaintiff is seeking permanent equitable relief both as a provisional measure pending a

possible appeal and as a remedy on its claims. We conclude, however, that Ashley does not

qualify for permanent equitable relief.

Ashley is required to show for a permanent injunction that it has suffered an irreparable

injury, that the remedies available at law are inadequate to compensate for that injury, that,

considering the balance of hardships between the parties, a remedy in equity is warranted, and

that the public interest would not be disserved by a permanent injunction. *Ebay Inc. v.*

*Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006). Here, we conclude that there are no "remedies

available at law" and that no "remedy in equity is warranted," based on our analysis of plaintiff's

claims. We presume, without deciding, that plaintiff would be irreparably harmed were Customs

to distribute to other parties what Ashley claims is its share of the withheld distributions. With

respect to the balance of hardships, Ashley would be prejudiced by such a distribution, but

defendant-intervenors also will be prejudiced by further delay in obtaining what they claim to be

their lawful CDSOA disbursements.  The public interest favors an orderly and lawful distribution

of the withheld funds.  But even if we presume that the factors of irreparable harm, balance of

hardships, and public interest are in plaintiff's favor, we still conclude that an injunction is

unwarranted.  The controlling factor is that neither a remedy at law nor a remedy in equity is

appropriate in the circumstances of this case.  For the reasons discussed in this opinion, we

conclude that the appropriate disposition is the dismissal of this action.

B.  No Relief Can Be Granted on the Claims in Counts 1, 2, 3, and 5 of the Amended Complaints

        In ruling on motions to dismiss made under USCIT Rule 12(b)(5), we dismiss complaints

that do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For the reasons discussed below, we conclude

that plaintiff has failed to plead facts on which we could conclude that it could obtain a remedy

on any of the claims asserted in Counts 1, 2, 3, and 5 of the amended complaints.  In brief

summary, plaintiff's claims that the actions by the two agencies were not supported by

substantial evidence and were otherwise not in accordance with law must be dismissed because

Ashley admits a fact establishing its disqualification from receiving CDSOA distributions and

presents no other facts from which the court reach a conclusion that those actions must be set

aside.  Relief on Ashley's constitutional claims under the First Amendment and the equal

protection guarantee of the Fifth Amendment is foreclosed by the binding precedent established

by *SKF*, which upheld the CDSOA against constitutional challenges brought on First

Amendment and equal protection grounds.  In the following, we address Counts 1 through 3, and

Count 5, in further detail.[10]

### 1.  Count 1 Fails to State a Claim upon which Relief Can Be Granted

In Count 1, plaintiff claims that "[t]he Commission's determination not to include Ashley

on its list of affected domestic producers for the antidumping order covering wooden bedroom

furniture from China and Customs' failure to accept Ashley's . . . CDSOA Certification[s] for

distributions, were not supported by substantial evidence and were otherwise not in accordance

with law."  First Amended Compl. ¶¶ 39-40.  We conclude that Count 1 fails to state a claim

upon which relief can be granted and, therefore, must be dismissed.

Plaintiff alleges that "[d]uring the injury phase of the antidumping investigation covering

wooden bedroom furniture from China, Ashley filed timely and complete questionnaire

responses to the Commission's domestic producer and importer questionnaires."  *Id*. ¶ 19.  The

CDSOA language pertinent to the issue raised by Count 1 is the directive that the ITC, in

providing its lists to Customs, include "a list of persons that *indicate support of the petition* by

letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1) (emphasis added).  Ashley's

filing of questionnaire responses without an indication of support for the petition does not satisfy

the petition support requirement.  Moreover, plaintiff admits that "[in] its questionnaire

responses, Ashley indicated that it opposed the petition."  First Amended Compl. ¶ 19.  Doing so

disqualified Ashley from receiving CDSOA distributions.

---

[10] Although relief on the Fifth Amendment due process claims that plaintiff bases on
retroactivity, which are stated in Count 4 of its amended complaints, is not foreclosed by binding
precedent, we conclude in Part II(C) of this opinion that Ashley has no standing to bring these
claims.

In opposing dismissal of Count 1, plaintiff argues that "[in] *SKF*, the Federal Circuit

adopted a saving construction of the CDSOA that could otherwise have violated the First

Amendment by conditioning receipt of CDSOA payments on the content of a domestic

producer's speech."  Pl.'s Resp. to Def.'s May 2, 2011 Mot. to Dismiss 9 (Jun. 6, 2011), ECF

No. 86 ("Pl.'s Resp.").  Plaintiff submits that, due to this saving construction, *SKF* does not

support dismissal here but rather "makes clear that Ashley is entitled to disbursements under the

statute, constitutionally construed."  *Id.* (footnote omitted).  Plaintiff views *SKF* to hold "that the

CDSOA 'only permit[s] distributions to those who actively supported the petition (i.e., a party

that did no more than submit a bare statement that it was a supporter without answering

questionnaires or otherwise actively participating would not receive distributions).'"  *Id.* at 10

(quoting *SKF*, 556 F.3d at 1353 n.26) (alteration in original).  Under this saving construction,

plaintiff argues, SKF USA Inc. ("SKF"), the plaintiff in *SKF*, "was ineligible to receive

distributions *not* because it opposed the petition in its responses to the ITC questionnaire, but

rather because it *actively opposed* the petition in other concrete ways that placed it in 'a role that

was nearly indistinguishable from that played by a defendant in a qui tam or attorney's fees

award case.'"  *Id.* at 11 (quoting *SKF*, 556 F.3d at 1358).  According to plaintiff, "[in] light of

this substantial opposition, the First Amendment did not bar denying [SKF] a share in

antidumping duties" but "compels the opposite result" in this case because, "[by] contrast,

Ashley took no similar steps to 'impede the investigation,' nor did it express a 'refus[al] to

cooperate' with the Government."  *Id.* at 11-12 (quoting *SKF*, 556 F.3d at 1359) (second

alteration in original).

Plaintiff's argument is based on an incorrect understanding of the holding in *SKF*.  The Court of Appeals did not construe the CDSOA such that a domestic producer may express opposition to a petition in its ITC questionnaire response and still be eligible to receive CDSOA distributions, so long as the producer does not take additional steps that amount to "substantial opposition" to the petition.  The opinion in *SKF* recounts the various steps SKF took in opposing an antidumping duty order that were beyond merely indicating opposition to the petition on a questionnaire response, but it did so in the context of explaining why it considered the petition support requirement not to be overly broad, and therefore permissible, under the test established by *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y*, 447 U.S. 557, 566 (1980). *SKF*, 556 F.3d at 1357-59.  The Court of Appeals reasoned that in enacting the petition support requirement Congress permissibly, and rationally, could conclude that those who did not support a petition should not be rewarded.  *Id.* at 1357, 1359.

Defendants' determinations denying benefits to Ashley comported with the CDSOA. Therefore, plaintiff's claims that either or both of the agencies acted unlawfully are meritless.

### 2.  Relief on Plaintiff's First Amendment Claims Is Foreclosed by Binding Precedent

In Count 2 of the First Amended Complaints, plaintiff claims that the petition support requirement "violates the First Amendment to the Constitution."  First Amended Compl. ¶ 42. Ashley claims, specifically, that "[d]efendants' application of the [CDSOA] conditions receipt of a government benefit on a private speaker['s] expressing a specific viewpoint  support for an antidumping petition  and, therefore, is viewpoint discrimination in contravention of the First Amendment."  *Id.* ¶ 43.  Count 5 of plaintiff's First Amended Complaints contains an as-applied challenge to the CDSOA that plaintiff also bases on the First Amendment.  *Id.* ¶¶ 49-50.

Plaintiff claims that the CDSOA violates the First Amendment as applied to Ashley "because it discriminates against Ashley based on expression of [Ashley's] views rather than action ([Ashley's] litigation support)." *Id*. ¶ 50.

Relief on Ashley's facial First Amendment claim is precluded by the holding in *SKF*, 556 F.3d at 1360 (holding that the Byrd Amendment is "valid under the First Amendment" because it "is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad."). The holding in *SKF* also forecloses relief on plaintiff's as-applied First Amendment claims. The Court of Appeals held that the CDSOA did not violate constitutional First Amendment principles as applied to SKF, which expressed in its response to the ITC's questionnaire its opposition to the antidumping duty petition involved in that litigation. *See SKF*, 556 F.3d at 1343 (stating that "SKF also responded to the ITC's questionnaire, but stated that it opposed the antidumping petition"). Ashley, like SKF, expressed opposition to the petition in its response to the ITC's questionnaire. Plaintiff fails to plead any facts that would allow the court to conclude, notwithstanding the binding precedent of *SKF*, that the CDSOA was applied to Ashley in a manner contrary to the First Amendment. In all material respects, Ashley's expression of opposition to an antidumping duty petition was equivalent to that of SKF and properly resulted in Ashley's disqualification from receiving distributions under the CDSOA.

In support of its as-applied First Amendment claims, Ashley directs the court's attention to the Supreme Court's decisions in *Snyder v. Phelps*, 131 S. Ct. at 1207 (2011), *Citizens United v. Federal Election Comm'n*, 130 S. Ct. at 876, *Sorrell v. IMS Health, Inc.*, 131 S. Ct. at 2653, and *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. at 2806.

According to plaintiff, these recent decisions have "rendered [the] conclusion of [*SKF*] utterly untenable . . .  Today, it is clear that corporate speech relating to matters such as international trade and law enforcement is entitled to the strictest First Amendment protection."  Pl.'s Resp. 21.  We disagree.

*Snyder v. Phelps* held that members of the Westboro Baptist Church who picketed near the funeral of a member of the U.S. Marine Corps killed in the line of duty in Iraq could not be held liable on state-law tort claims alleging intentional infliction of emotional distress, intrusion upon seclusion, and civil conspiracy.  131 S. Ct. at 1213-14, 1220.  Concluding that the various messages condemning the United States and its military displayed on the picketer's signs were entitled to "'special protection' under the First Amendment," *id*. at 1219, the Supreme Court held that the jury verdict holding the Westboro picketers liable on the tort claims must be set aside as an impermissible burden on protected speech, even if the picketing caused emotional distress to the mourners, *id.* at 1220.  The Supreme Court cautioned that its holding was narrow and limited to the particular facts before it, having emphasized that the picketers carried signs displaying messages that, for the most part, constituted speech addressing matters of public concern, *id.* at 1216-17, and conducted their picketing peacefully, and without interfering with the funeral, at each of three locations the Supreme Court considered to be a public forum, *id.* at 1218-19.

Plaintiff maintains that "[in] light of the Court's decision in *Snyder*, there can be no dispute that opposition to a government antidumping investigation constitutes speech on a matter of public concern, subject to full First Amendment protection" and that to the extent that *SKF* rested on a belief that this opposition does not constitute political speech, "*Snyder* demonstrates that the Federal Circuit erred."  Pl.'s Resp. 22.  *Snyder*, however, resolved a First Amendment

question differing from those presented by this case and by *SKF*.  Ashley is not asserting First

Amendment rights as a defense against civil liability for an award of monetary damages.  The

"burden" the CDSOA placed on Ashley's speech — ineligibility for potential CDSOA

distributions — does not rise to a level commensurate with the burden the Supreme Court

addressed by setting aside the jury verdict against the Westboro picketers.  In speaking to a

different First Amendment issue than the one Ashley raises, *Snyder* does not establish a principle

of First Amendment law under which we may invalidate the CDSOA petition support

requirement in response to Ashley's as-applied challenge.

In *Citizens United v. Federal Election Commission*, the Supreme Court struck down a

federal election law imposing an "outright ban, backed by criminal sanctions" on independent

expenditures by a "corporation," including "nonprofit advocacy corporations" or "unions,"

during the thirty-day period preceding a primary election or the sixty-day period preceding a

general election, for an "electioneering communication" or for advocacy of the election or defeat

of a candidate.  130 S. Ct. at 886-87, 897.  Reasoning that "political speech must prevail against

laws that would suppress it, whether by design or inadvertence," the Supreme Court concluded

that "[l]aws that burden political speech are 'subject to strict scrutiny,' which requires the

Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored

to achieve that interest.'"  *Id*. at 898 (citing *Federal Election Comm'n v. Wisconsin Right to Life,

Inc.*, 551 U.S. 449, 464 (2007)).

Ashley argues that the holding in *SKF* cannot stand now that the Supreme Court has

"made perfectly clear that so long as speech relates to matters of public concern, it is entitled to

the highest form of constitutional protection, even if it involves corporations or 'activities of a

commercial nature.'"  Pl.'s Resp. 23 (quoting *SKF*, 556 F.3d at 1355).  According to plaintiff,

applying a lesser standard of scrutiny to the petition support requirement, as the Court of Appeals

did in *SKF* based on a perceived statutory purpose of rewarding cooperation with the

government, "is incompatible with *Citizens United*."  *Id.*  Positing that the petition support

requirement as applied to entities like Ashley "is calculated to silence  or at least

discourage  dissent against proposed antidumping actions," plaintiff argues that "[t]his sort of

arm-twisting cannot withstand constitutional scrutiny after *Citizens United*."  *Id.* at 24.

     *Citizens United* does not hold that any statute affecting speech relating to matters of

public concern, whether made by individuals or corporations, is to be subjected to a strict

scrutiny standard.  The statute struck down in *Citizens United* banned political speech, and the

Supreme Court's decision to apply strict scrutiny can only be viewed properly in that context.  As

the Court of Appeals recognized in *SKF*, the CDSOA "does not prohibit particular speech," that

"statutes prohibiting or penalizing speech are rarely sustained," and that "cases addressing the

constitutionality of such statutes are of little assistance in determining the constitutionality of the

far more limited provisions of the Byrd Amendment."  556 F.3d at 1350.  The Court of Appeals

reasoned that "[in] considering limited provisions that do not ban speech entirely, the purpose of

the statute is important," and concluded that "[n]either the background of the statute, nor its

articulated purpose, nor the sparse legislative history supports a conclusion that the purpose of

the Byrd Amendment was to suppress expression."  *Id.* at 1350-51.  Contrary to this view, Ashley

maintains that "the Supreme Court in *Citizens United* made clear that the degree of First

Amendment protection afforded corporate speech on matters of public concern does not vary

depending on whether the government directly prohibits speech or instead withholds benefits

based on speech." Pl.'s Resp. 24 (citing *Citizens United*, 130 S. Ct. at 905). Thus, plaintiff's

argument would have us consider immaterial the distinction between the CDSOA, which does

not prohibit speech, and the statute struck down in *Citizens United*, which had as its purpose and

effect the suppression of political speech through an "outright ban, backed by criminal

sanctions." *Citizens United*, 130 S. Ct. at 897.

     Plaintiff misreads *Citizens United*.  In the passage from the opinion to which plaintiff

directs our attention, the Supreme Court explained that it no longer subscribes to certain

reasoning expressed in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), which

*Citizens United* overturned.  *Citizens United* signaled the Court's rejection of the notion that the

special state-law advantages corporations enjoy over wealthy individuals, such as limited

liability, perpetual life, and favorable treatment of accumulation and distribution of assets, can

suffice to allow laws "prohibiting speech," *i.e.*, laws prohibiting corporations from speaking on

matters of public concern.  130 S. Ct. at 905.  Plaintiff misconstrues the Supreme Court's

explanation to mean broadly that "[w]hile the government has no obligation to provide those

benefits to corporations, the Court made clear that the government may not condition

corporations' receipt of these benefits on corporations' foregoing full First Amendment

protection for their speech." Pl.'s Resp. 24 (citing *Citizens United*, 130 S. Ct. at 905). Rather,

the Supreme Court was specific in concluding that the granting of benefits to corporations under

state laws "does not suffice, however, to allow laws *prohibiting* speech." *Citizens United*,

130 S. Ct. at 905 (emphasis added).  Because the CDSOA is not a prohibitory statute, and

because the relevant purpose of the CDSOA is to reward petitioners and those in support of

petitions, we reject the argument that *Citizens United* implicitly invalidates the *SKF* analysis

upholding the CDSOA against attack on First Amendment grounds.

Plaintiff argues, next, that in the wake of the Supreme Court's decision in *Sorrell*, the

conclusion that intermediate scrutiny should be applied to the CDSOA "despite the CDSOA's

viewpoint discrimination" is a conclusion that "can no longer stand" and that the CDSOA now

must be subjected to "heightened judicial scrutiny." Pl.'s Notice of Supp. Authority 2 (citing

*Sorrell*, 131 S. Ct. at 2663-64). As we did recently in ruling on another First Amendment

challenge to the CDSOA, we reject the argument that *Sorrell* implicitly overturned *SKF*.

*Furniture Brands*, 35 CIT __, __, Slip Op. 11-132, at 23-25.

*Sorrell* struck down a Vermont statute (the "Prescription Confidentiality Law") that

prohibited, subject to certain exceptions, the sale, disclosure, and use of "prescriber-identifying

information," which is information obtained from pharmacy records that reveals the drug

prescribing practices of individual physicians. 131 S. Ct. at 2660 (citation omitted). The statute

prohibited pharmacies, health insurers, and similar entities from selling this information, or

allowing such information to be used for marketing, without the prescriber's consent, and it

prohibited pharmaceutical manufacturers and marketers from using such information for

marketing without the prescriber's consent. *Id.* The statute authorized the Vermont attorney

general to pursue civil remedies against violators. *Id.*

The Supreme Court concluded that the Prescription Confidentiality Law "enacts

content-and speaker-based restrictions on the sale, disclosure, and use of prescriber-identifying

information." *Id.* at 2663. Under the "heightened scrutiny" the Supreme Court considered to be

warranted, "the State must show at least that the statute directly advanced a substantial

government interest and that the measure is drawn to achieve that interest." *Id.* at 2667-68.  The

Court concluded that the State of Vermont failed to make that showing.  The Court considered

that the stated interest of promoting medical privacy and physician confidentiality did not justify

the prohibitions placed on the sale and use of the information.  *Id*. at 2668.  The Court noted that

the law allowed wide dissemination of the information but effectively prohibited use of the

information by a class of disfavored speakers ("detailers," who used the prescriber-identifying

information to promote brand-name drugs on behalf of pharmaceutical manufacturers) and in

effect prohibited a disfavored use, marketing.  *Id*.  Under the Supreme Court's analysis, the

Vermont law "forbids sale" of the information "subject to exceptions based in large part on the

content of a purchaser's speech," disfavors "marketing, that is, speech with a particular content,"

and "disfavors specific speakers, namely, pharmaceutical manufacturers." *Id.* at 2663.  Another

purpose the State of Vermont advanced in support of the Prescription Confidentiality

Law  reducing health care costs and promoting public health  also failed to justify the burden on

speech.  *Id*. at 2668, 2670.  In restraining certain speech by certain speakers, and specifically, in

diminishing the ability of detailers to influence prescription decisions, the statute sought to

influence medical decisions by the impermissible means of keeping physicians from receiving

the disfavored information.  *Id*. 2670-71.

     As we observed in our *Furniture Brands* opinion, *Sorrell* and *SKF* analyze dissimilar

statutes, which vary considerably in the nature and degree of the effect on expression as well as

in purpose.  *Furniture Brands*, 35 CIT at __, Slip Op. 11-132, at 23.  *SKF* concluded that the

CDSOA does not have as a stated purpose, or even an implied purpose, the intentional

suppression of expression, *SKF*, 556 F.3d at 1351-52, whereas the Vermont statute authorized

civil remedies against those selling or using the prescriber-identifying information that the statute

sought to suppress.  *See Sorrell*, 131 S. Ct. at 2660.  *Sorrell* does not require us to review the

CDSOA according to a First Amendment analysis differing from that applied by the Court of

Appeals in *SKF*.  In analyzing the Vermont statute, the Supreme Court stated in *Sorrell* that "the

State must show at least that the statute directly advances a substantial government interest and

that the measure is drawn to achieve that interest."  131 S. Ct. at 2667-68 (citing *Board of*

*Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480-81 (1989); *Central Hudson*, 447 U.S.

at 566).  *SKF* concluded that "SKF's opposition to the antidumping petition is protected First

Amendment activity," 556 F.3d at 1354, and applied a test to which it referred as the "well

established *Central Hudson* test," *id.* at 1355.  The Court of Appeals described this test as

requiring that regulation of commercial speech be held permissible if the asserted governmental

interest is substantial, the regulation directly advances that interest, and the regulation is not more

extensive than is necessary to serve that interest.  *Id.* (citing *Central Hudson*, 447 U.S. at 566).

We reject plaintiff's argument that *Sorrell* requires us to apply to the CDSOA a level of scrutiny

different from that applied by the Court of Appeals in *SKF*.

        In *Arizona Free Enterprise*, the Supreme Court struck down an Arizona campaign finance

law imposing a "matching funds scheme" that "substantially burdens protected political speech

without serving a compelling state interest and therefore violates the First Amendment."  131 S.

Ct. at 2813.  Under the Arizona statute, candidates for state office who agreed to accept public

funding received matching funds when the allotment of state funds to the publicly financed

candidate were exceeded by an amount calculated according to the amount a privately funded

candidate received in contributions (including the candidate's "contribution" of expenditures of

personal funds), combined with the expenditures independent groups made in support of the

privately funded candidate or in opposition to a publicly funded candidate.  *Id.* at 2313-14.

According to plaintiff, "the Supreme Court's decision in *Arizona Free Enterprise*

demonstrates that, contrary to the government's position, strict scrutiny applies to viewpoint

discrimination that falls short of an 'outright ban'" and that "[in] *SKF*, the Federal Circuit

declined to apply heightened scrutiny even though the CDSOA has the equivalent effect,

providing a subsidy to the direct economic competitors of those engaging in disfavored speech."

Pl.'s  Notice of Supp. Authority 3-4.  Therefore, plaintiff argues, *SKF* "is no longer compatible

with Supreme Court precedent."  *Id*. at 4.

We do not agree that the Supreme Court's holding in *Arizona Free Enterprise* implicitly

invalidates the holding in *SKF*.  *Arizona Free Enterprise* is one of a line of Supreme Court cases

that struck down laws affecting speech during campaigns for political office.  That line of cases

includes *Citizens United*, discussed *supra*, and *Davis v. Federal Election Comm'n*, 554 U.S. 724

(2008), which invalidated a federal statute under which a new, asymetrical regulatory scheme of

limits on campaign donations of individuals in elections for the U.S. House of Representatives

was triggered when one candidate in such an election spent more than $350,000 of personal

funds on the race.  *Arizona Free Enterprise*, 131 S. Ct. at 2818.  The Supreme Court grounded its

reasoning in *Arizona Free Enterprise* partly on the principle that "the First Amendment 'has its

fullest and most urgent application' to speech uttered during a campaign for political office."  *Id*.

(quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989))

(internal quotation marks omitted).  Stating in *Arizona Free Enterprise* that "[t]he logic of *Davis*

largely controls our approach to this case," the Supreme Court found the burdens the Arizona law

imposed on speech uttered during a campaign to impose an even more onerous penalty on the

free speech of a privately funded candidate than did the federal statute invalidated in *Davis* and to

inflict a penalty on groups making or desiring to make independent expenditures.  *Id.* at 2818-20.

Under the Arizona law's scheme, "[t]he direct result of the speech of privately financed

candidates and independent expenditure groups is a state-provided monetary subsidy to a

political rival."  *Id.* at 2821.  Contrary to plaintiff's argument, the CDSOA does not bear more

than a superficial resemblance to the laws invalidated in *Arizona Free Enterprise*, *Davis* (a case

decided prior to *SKF*), and similar such cases, which regulated and impermissibly burdened

political speech during an election by restricting campaign expenditures.  Accordingly, we reject

Ashley's contention that *Arizona Free Enterprise* established a new First Amendment principle

requiring us to disregard the holding in *SKF* and to apply a strict scrutiny analysis to the CDSOA.

In summary, *SKF* remains binding precedent that is controlling on the disposition of

plaintiff's as-applied First Amendment claims.  These claims must be dismissed according to

USCIT Rule 12(b)(5).

### 3.  Relief on Plaintiff's Equal Protection Claims Is Foreclosed by Precedent

In Count 3 of the amended complaints, plaintiff claims that the petition support

requirement of the CDSOA "violates the Equal Protection Clause of the Constitution because

Defendants have created a classification that implicates Ashley's fundamental right of speech and

Defendants' actions are not narrowly tailored to a compelling government objective."  First

Amended Compl. ¶ 45.  Count 3 claims, further, that defendants' application of the CDSOA to

Ashley "also violates the Equal Protection Clause because it impermissibly discriminates

between Ashley and other domestic parties who expressed support for the relevant antidumping

petition, denying a benefit to Ashley."  *Id.* ¶ 46.

Relief on these claims is foreclosed by the holding in *SKF*.  The Court of Appeals held in

*SKF* that the CDSOA did not violate equal protection principles as applied to plaintiff SKF.

Ashley, like SKF, expressed opposition to the relevant antidumping duty petition and thus failed

to satisfy the petition support requirement, 19 U.S.C. § 1675c(d)(1).  *Compare* First Amended

Compl. ¶ 19 ("In its questionnaire responses, Ashley indicated that it opposed the petition.") *with*

*SKF*, 556 F.3d at 1343 ("SKF also responded to the ITC's questionnaire, but stated that it

opposed the antidumping petition.").  Plaintiff points out that SKF "did much more than simply

express abstract opposition to the petition," Pl.'s Resp. 13, but this fact does not distinguish the

holding in *SKF* from the case before us.  In ruling on claims that are not distinguishable from

Ashley's in any material way, the Court of Appeals held that "[b]ecause it serves a substantial

government interest, the Byrd Amendment is . . . clearly not violative of equal protection under

the rational basis standard," *SKF*, 556 F.3d at 1360, and that "the Byrd Amendment does not fail

the equal protection review applicable to statutes that disadvantage protected speech," *id*.

at 1360 n.38.

Because plaintiff fails to plead facts allowing the court to conclude that its equal

protection claims are distinguishable from those brought, and rejected, in *SKF*, Count 3 must be

dismissed for failure to state a claim upon which relief can be granted.

C.  Plaintiff Lacks Standing to Bring a Fifth Amendment Retroactivity Challenge to the CDSOA

Count 4 of the amended complaints challenges the CDSOA under the Due Process

guarantee of the Fifth Amendment on the ground that the statute is impermissibly retroactive.

Plaintiff claims that the petition support requirement of the CDSOA "violates the Due Process

Clause of the Constitution because Defendants base Ashley's eligibility for disbursements on

past conduct (*i.e.*, support for a petition)." First Amended Compl. ¶ 48. According to Count 4,

"[t]he Due Process Clause disfavors retroactive legislation, and Defendants' disbursements only

to those companies that express support for a petition is not rationally related to a legitimate

government purpose." *Id.*

　　　　We construe Ashley's retroactivity claims, which are vaguely stated, to mean that the

CDSOA is impermissibly retroactive under the Fifth Amendment due process guarantee because

it conditions the receipt of distributions on a decision whether or not to support an antidumping

duty petition that was made before the statute went into effect, and thus before the affected party

making that decision could have had notice of the consequences. *See* 19 U.S.C. § 1675c(d)(1)

(directing the ITC to forward to Customs a list identifying petitioners and parties expressing

support for a petition "within 60 days after the effective date of this section in the case of orders

or findings in effect on January 1, 1999 . . . . "). Because it applies to petition support decisions

made prior to enactment, the CDSOA may be characterized as having a retroactive aspect. *See*

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (considering a retroactive statute to be

one that attaches "new legal consequences to events completed before its enactment"). We

previously have concluded that the CDSOA is not violative of the due process guarantee because

"the retroactive reach of the petition support requirement in the CDSOA is justified by a rational

legislative purpose and therefore is not vulnerable to attack on constitutional due process

grounds." *New Hampshire Ball Bearing Co., Inc. v. United States*, 36 CIT __, __, Slip Op. 12-2,

at 14 (Jan. 3, 2012); *see also Schaeffler Grp. USA, Inc. v. United States*, 36 CIT __, __, Slip

Op. 12-8, at 11-12 (Jan. 17, 2012). We conclude that Ashley's retroactivity claims, when

construed in this way, must be dismissed for lack of standing.[11] Because the CDSOA was

enacted in 2000, it was not applied retroactively to Ashley, which expressed opposition to the

wooden bedroom furniture petition in 2003. First Amended Comp. ¶¶ 18-19. Ashley, therefore,

had the "opportunity to . . . conform [its] conduct accordingly." *Landgraf*, 511 U.S. at 265. As a

consequence, plaintiff's amended complaints fail to allege an injury in fact arising from conduct

predating the CDSOA's enactment. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,

528 U.S. 167, 180-81 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) ("To

satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in

fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical . . .").

     Because the amended complaints do not allege facts from which we may conclude that

Ashley has standing to bring the claims stated as Count 4, we must dismiss these claims for lack

of jurisdiction pursuant to USCIT Rule 12(b)(1).

---

[11] It is also possible to construe Ashley's retroactivity claims, when read literally, to mean that the CDSOA is impermissibly retroactive under the due process guarantee simply because it attaches negative consequences to petition support decisions made prior to the determination of eligibility for distributions. We decline to construe the claims in this way because, according to such a construction, the CDSOA would not be "retroactive" as the term has been recognized in case law and would be indistinguishable from any of innumerable statutes attaching a consequence to a past action of a person to whom enactment of the statute provided notice of the consequences. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."). Were we to adopt the alternate construction of plaintiff's retroactivity claims that we pose hypothetically, we would be compelled to dismiss such claims as ones upon which no relief could be granted.

### III.  CONCLUSION

Because neither a remedy at law nor a remedy in equity is available on the claims stated in Counts 1, 2, 3, and 5 of the amended complaints, and because the claims in Count 4 of the amended complaints must be dismissed for lack of standing, we conclude that plaintiff is not entitled to injunctive relief that would delay the pending CBP distribution of CDSOA funds or to an affirmative injunction directing distribution of CDSOA benefits to Ashley.  For the same reasons, we will grant the motions to dismiss filed by defendants and defendant-intervenors. Plaintiff already has taken the opportunity to amend its original complaints and has not indicated an intention to seek leave to amend its complaints again, and we see no reason why this action should be prolonged.  Accordingly, we shall enter judgment dismissing this action.

/s/ Timothy C. Stanceu

Timothy C. Stanceu
Judge

Dated: January 31, 2012
       New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ASHLEY FURNITURE INDUSTRIES, INC.,** | |
| Plaintiffs, | |
| v. | |
| **UNITED STATES**, | |
| Defendants, | **Before:   Gregory W. Carman, Judge** |
| | **Timothy C. Stanceu, Judge** |
| and | **Leo M. Gordon, Judge** |
| **AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,** | **Consol. Court No. 07-00323** |
| Defendant-Intervenors. | |

## <u>JUDGMENT</u>

Upon consideration of the amended complaints, the motion to dismiss for failure to state a claim upon which relief can be granted and for judgment on the pleadings filed by the defendant-intervenors, which the court reviews as a motion to dismiss, the motions to dismiss by defendants U.S. International Trade Commission and U.S. Customs and Border Protection, plaintiff's motion for a preliminary injunction, defendants and defendant-intervenors' motions for extension of time to respond to the preliminary injunction, and all other papers and proceedings herein, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that plaintiff's motion for a preliminary injunction be, and hereby is, DENIED; it is further

**ORDERED** that the motions to dismiss of defendants and defendant-intervenors be, and hereby are, GRANTED; it is further

**ORDERED** that plaintiff's statutory claims, First Amendment claims, and Fifth Amendment equal protection claims be, and hereby are, DISMISSED for failure to state a claim upon which relief can be granted; it is further

 **ORDERED** that plaintiff's Fifth Amendment due process claims be, and hereby are, DISMISSED for lack of standing; it is further

 **ORDERED** that defendants and defendant-intervenors' motions for extension of time to respond to plaintiff's motion for preliminary injunction be, and hereby are, DENIED as moot; and it is further

 **ORDERED** that this action be, and hereby is, DISMISSED.

<div align="right">

/s/ Timothy C. Stanceu     
Timothy C. Stanceu
Judge

</div>

Dated: January 31, 2012
      New York, New York